IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATHAINAL O. SMITH,

        Petitioner,

    v.

MARK NOOTH,

        Respondent.

Case No. 6:14-cv-00330-HZ

OPINION AND ORDER

Kristina S. Hellman, Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Kristen E. Boyd, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - OPINION AND ORDER

HERNANDEZ, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Robbery, Attempted Murder, and Felon in Possession of a Weapon. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#12) is denied.

## BACKGROUND

In August 2007, petitioner, Alesha Goldhammer, and Crystal Bolton acted together to commit a robbery. These co-defendants met their victims at Big Shots tavern in Salem. The group traveled to the apartment of one of the victims where the co-defendants robbed the victims, and petitioner fired his gun twice, striking one of the individuals in the hand. Salem police officers responded to a report of gunfire at 2:52 a.m., but petitioner was no longer there. Authorities arrested petitioner approximately one week later, and the Marion County Grand Jury indicted petitioner on one count of Attempted Murder, six counts of Robbery in the First Degree, seven counts of Unlawful Use of a Weapon, one count of Assault in the First Degree, one count of Assault in the Second Degree, and one count of Felon in Possession of a Firearm. Respondent's Exhibit 102.

Petitioner was initially represented by Helen Cooper, and on February 26, 2008, Scott Howell was substituted as counsel. On May 1, 2008, petitioner pleaded no contest to Attempted Murder, six

2 - OPINION AND ORDER

counts of Robbery in the First Degree, and Felon in Possession of a Firearm. Respondent's Exhibit 104. The remaining charges were dropped, and the State agreed to cap its sentencing recommendation at 360 months. Respondent's Exhibit 103.

After petitioner entered his plea, he appeared in juvenile court at a parental rights termination hearing where he was represented by Craig Rockwell. During that hearing, it became apparent that petitioner believed his criminal case was still pending. This prompted Rockwell and the juvenile court judge to contact Howell about petitioner's mistaken belief that his criminal action was still pending. Respondent's Exhibit 106, p. 12.

On August 14, 2008, petitioner moved to withdraw the plea claiming that Howell had erroneously advised him that the plea was not binding and would simply allow him more time to investigate the case. Respondent's Exhibit 105, pp. 4-5. Mark Obert then substituted in as new counsel for petitioner, and a hearing was held on petitioner's Motion where Howell appeared as a witness. According to Howell, while petitioner was apparently confused during the juvenile proceedings, he never seemed confused while reviewing the Plea Petition with Howell or when he appeared in court to enter his plea. Respondent's Exhibit 106, pp. 14-15. The court ultimately denied the Motion to Withdraw when it found Howell to be more credible than petitioner. *Id* at 22.

3 - OPINION AND ORDER

On June 8, 2009, petitioner filed a second motion to withdraw the guilty plea as well as a motion for reconsideration of the court's prior refusal to allow him to withdraw his plea. These motions were based on: (1) an investigator's account of an alibi witness, Brooke Mussche, who claimed she dropped petitioner off at his home prior to the robbery, and saw Goldhammer and Bolton at Big Shots Tavern later that night and petitioner was not with them; and (2) a letter from Rockwell accusing Howell of perjury during the first motion to withdraw the plea. Respondent's Exhibits 144 & 145. Following a hearing where Rockwell testified that he believed that Howell perjured himself during the plea hearing, the court denied both motions. Respondent's Exhibit 107, pp. 2-10. The court then proceeded to sentence petitioner to 180 months in prison. *Id* at 15.

Petitioner did not take a direct appeal and instead filed for post-conviction relief ("PCR") in Umatilla County where he alleged, in part, that he would have insisted on proceeding to trial had his attorneys conducted a proper investigation. In support of his PCR action, he produced affidavits from Teresa Garcia and Brooke Mussche which suggested petitioner was home with his child at the time of the robbery. Respondent's Exhibits 124 & 125.

The State introduced competing affidavits from petitioner's three trial attorneys. His first trial attorney, Helen Cooper, recalled that petitioner "admitted being present at the residence

4 - OPINION AND ORDER

while [Bolton] was working as a prostitute," and that he claimed "that the gun 'accidentally' went off. Twice." Respondent's Exhibit 131, p. 2. Cooper advised petitioner "that his story was utterly unbelievable." *Id.*

Howell's Affidavit revealed that his investigator had interviewed Teresa Garcia, but that her testimony would not have been helpful because: (1) the crimes at issue were committed well after Garcia claimed that petitioner had picked up his son from her residence at 10:30 p.m.; and (2) her statements were inconsistent with petitioner's own statements to the police that he "was at a bar until 1:30 a.m." and that a co-defendant took him home "sometime later." Respondent's Exhibit 132, p. 2.

The PCR trial court determined that the Cooper and Howell Affidavits were credible, and denied relief on petitioner's claims. Respondent's Exhibit 149. Petitioner appealed that decision raising a single claim: Howell rendered ineffective assistance when he failed to locate Mussche during his investigation of the case. Respondent's Exhibit 150, pp. 6, 10-11. The Oregon Court of Appeals affirmed the PCR trial court's decision without opinion, and the Oregon Supreme Court denied review. *Smith v. Coursey*, 255 Or. App. 826, 299 P.3d 891, *rev. denied*, 353 Or. 867, 306 P.3d 6396 (2013).

5 - OPINION AND ORDER

On April 16, 2014, petitioner filed his Amended Petition for Writ of Habeas Corpus (#12) in which he raises the following claims:

> Ground One: I feel I should have been given a fast and speedy trial that I requested and denied. I asked for a bail and was told Measure 11 doesn't get bail.
>
> Supporting Facts: My court attorney told me I did not have a right to a fast and speedy trial because Measure 11 crimes don't get fast and speedy trial. I was also told that since I was charged with Measure 11 I didn't get a bail as well. My court Attorney (Helen Cooper) didn't even hire an investigator to look into my case.
>
> Ground Two: I didn't get adequate/effective counsel from Helen Cooper, Scott Howell, or Mark Obert.
>
> Supporting Facts: Helen Cooper didn't want to fight for me at all. Helen Cooper wanted me to sign a deal that I constantly denied. Helen Cooper never hired a[n] investigator, and when I filed a bar complaint on her she said it was because I told her I did the crime, which I never did. Scott Howell lied to me and tricked me into signing a deal because he said he had a strategy that would help me, but it was a lie. Then I was denied to withdraw the plea when I requested to. Mark Obert is friends with Scott Howell and wouldn't do the job to investigate to see the lies that Scott Howell was telling.
>
> Ground Three: My conviction was obtained by plea of no contest was unlawfully induced without understanding of the nature to the charge and consequence of the plea.
>
> Supporting Facts: I was told by Scott Howell if I was to sign an open plea we would later request for a withdrawal so that it would buy Scott Howell some time to help my case. I had

6 – OPINION AND ORDER

> another attorney named Craig Rockwell tell me that what Scott Howell told me was untrue and I needed to tell Scott Howell that. I told Scott Howell that and Scott Howell said he knows what he's doing and not to listen to Craig Rockwell. Then when we went to withdraw the plea we were denied.
>
> Ground Four: My arrest was without legal merit as the court ordering the imprisonment made legal or factual error with failing to safeguard against arbitrary and lawless state action or miscarriage of justice within its reach.
>
> Supporting Facts: There were statements from people that would have proven my innocence, but they went unheard. The statement of my so-called codefendants only became that because they where offered great deals. One codefendant didn't even get any prison time.

Amended Petition (#12), p. 4.

Respondent asks the court to deny relief on the Amended Petition because: (1) petitioner failed to fairly present Grounds One through Four when he did not raise them to the state appellate courts; (2) relief should be denied on Ground Three insofar as it was a presented as a federal claim to the Oregon state courts because the state court decision denying the claim was neither contrary to, nor an unreasonable application of, clearly established federal law; and (3) all of petitioner's claims lack merit.

///

///

///

## DISCUSSION

### I. Unargued Claims

In his supporting memorandum, petitioner pursues two issues of ineffective assistance of trial counsel wherein he alleges that: (1) Howell failed to investigate and locate Brooke Mussche who would have provided favorable alibi evidence;[1] and (2) Howell failed to adequately inform him about the no-contest plea. Petitioner does not argue the merits of his remaining claims in Grounds One, Two, and Four, nor does he address any of respondent's arguments as to why relief on these claims should be denied. As such, petitioner has not carried his burden of proof with respect to these unargued claims. See *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims).

### II. Exhaustion and Procedural Default

As Ground Three, petitioner alleges that Howell prompted him to enter a no-contest plea that was not knowing, voluntary, and intelligent insofar as counsel misadvised him that entry of the plea was simply a tool to allow the defense additional time to investigate the case. During his PCR appeal, petitioner raised a single claim: whether his plea was knowing, intelligent, and

---

[1] In a separate Order, the court concluded that a liberal construction of the Amended Petition encompassed counsel's alleged failure to investigate and locate Mussche, a claim respondent concedes petitioner raised on appeal. See Order (#43), p. 4; Responde (#26), p. 11.

8 - OPINION AND ORDER

voluntary where Howell failed to investigate the case. Respondent's Exhibit 150. Specifically, he advised the Oregon Court of Appeals that "petitioner's argument is that trial counsel failed to locate a separate witness, Brooke Mussche." Id at 6. Petitioner's reference to "trial counsel" was to Scott Howell. Id at 4 ("the claim in this appeal relates to . . . Scott Howell"). He did not pursue his Ground Three claim that counsel misadvised him regarding entry of his plea so as to allow additional time to investigate. Because the time for presenting such a claim to the Oregon Court of Appeals passed long ago, the claim is procedurally defaulted.

Petitioner concedes that this claim is procedurally defaulted, but he asks the court to excuse the default because he is actually innocent of his underlying convictions. In Schlup v. Delo, 513 U.S. 298 (1995), the Supreme Court addressed the process by which state prisoners may prove "actual innocence" so as to excuse a procedural default. The Court explained that in order to be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Id. at 324; Downs v. Hoyt, 232 F.3d 1031, 1040 (9th Cir. 2000), cert. denied, 121 S.Ct. 1665 (2001). The Ninth Circuit has held that "habeas petitioners may

9 - OPINION AND ORDER

pass *Schlup's* test by offering 'newly presented' evidence of innocence." *Griffin v. Johnson*, 350 F.3d 950, 963 (9th Cir. 2003). The meaning of "newly presented" evidence is evidence that was not before the trial court. *Id.*

Ultimately, petitioner must prove that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327; *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Downs*, 232 F.3d at 1040. In making this determination, this court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup*, 513 U.S. at 332.

In assessing the adequacy of petitioner's showing, the court is not bound by the rules of admissibility that would govern at trial. "Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." *Id.* at 327. "The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 328 (internal quotations omitted).

It is difficult to engage in an actual innocence analysis in the absence of a record where petitioner avoided a trial by

entering a no-contest plea. Notwithstanding this fact, petitioner asserts that he is actually innocent because the testimony that would have been given against him by his co-defendants was the product of favorable deals offered to them by the prosecutor, not the truthful recollection of the events in question. He also relies upon his own prior statements as to his innocence, as well as the PCR affidavits of Teresa Garcia and Brooke Mussche.[2]

Petitioner's position that his co-defendants lied in order to secure a favorable plea offer is unsupported and amounts to speculation. Where petitioner's co-defendants identified him as being a participant in the crime, where "numerous victims" of the crime identified him as a perpetrator,[3] and where he admitted to Cooper that he was present at the victims' residence where his firearm discharged twice, he has not shown that but for the newly presented evidence, no reasonable juror would have voted to convict him. As such, petitioner's request for an evidentiary hearing to

---

[2] Although respondent asserts that none of this constitutes "new" evidence for purposes of the *Schlup* gateway analysis, petitioner did not present Garcia's or Mussche's accounts at a trial or before he entered his no-contest plea. As a result, and despite the fact that petitioner presented this evidence to the state courts after the entry of his plea, it appears to be constitute "new evidence." *See, e.g., Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003) (medical records in petitioner's possession which were not offered prior to accepting plea bargain constituted newly presented evidence).

[3] Respondent's Exhibit 132, p. 3.

11 - OPINION AND ORDER

provide personal testimony on the issue of his innocence is denied. *See Gandarela v. Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002).

Although petitioner also asserts that the court should excuse the default because PCR appellate counsel should have pursued his claim, any failure on the part of PCR appellate counsel cannot serve to excuse a procedural default. *Martinez v. Ryan*, 566 U.S. ----, 132 S.Ct. 1309, 1315 (2012) (only ineffective assistance of a PCR *trial* attorney can constitute cause to excuse a procedural default). For all of these reasons, petitioner is unable to excuse his procedural default.

## III. The Merits

### A. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that

contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision.  *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

///
///

13 - OPINION AND ORDER

## B. Ineffective Assistance of Counsel: Failure to Locate Mussche

According to petitioner, he was the victim of ineffective assistance of counsel when Howell failed to investigate and locate Mussche during his investigation of the case. The PCR trial court rejected this claim without providing a rationale for doing so. Accordingly, the court conducts an independent review of the record.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice, a petitioner who has pled guilty or no

14 - OPINION AND ORDER

contest to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

During petitioner's PCR trial, Mussche submitted an Affidavit wherein she stated that she left the Big Shots Tavern with Bolton and petitioner at 11:30 p.m. She went back out at 12:30 a.m. to the Lucky Fortune Restaurant and Lounge where she saw Bolton but did not see petitioner. She left the restaurant at approximately 1:15 a.m. and, while on her way home, received a call from petitioner. During the call, she could hear a "fussy child in the background." Respondent's Exhibit 125. According to petitioner, had counsel located Mussche, he would have proceeded to trial because her testimony would have: (1) supported his position that he was not with Bolton when she left the bar to go to the victims' apartment; and (2) supported a conclusion that he was home with his young son at the time he called Mussche at 1:15 a.m. when he was thought to be at the victims' apartment.

There is no indication in the record that petitioner provided Howell with Mussche's name, or otherwise alerted Howell that she might be able to offer information or testimony valuable to the

15 - OPINION AND ORDER

defense. Instead, it appears petitioner provided Howell's investigator with information pertaining to Teresa Garcia and her sons, information which Howell ultimately determined would not be useful. Respondent's Exhibit 132, p. 2.

Despite the fact that Howell turned over his entire file to Obert when Obert substituted in as counsel on September 29, 2008, Mussche's name did not come up until Obert hired his own investigator who met personally with petitioner. Where Howell's file was devoid of any mention of Mussche, it does not appear that petitioner mentioned Mussche to Howell as a possible witness.

Only after meeting with petitioner did Obert's investigator note only that petitioner mentioned a woman named "Brooke." Respondent's Exhibit 120, p. 4. Petitioner was unable to provide her last name, and was only able to provide the investigator with the person's gender, ethnicity, age range, height, and weight. Respondent's Exhibit 120, p. 4. It was actually Mussche who ultimately contacted Obert's investigator on December 5, 2008 claiming to have important information to provide. *Id* at 11. Mussche proved to be quite elusive, and Obert's investigator was not able to obtain any information from her until April 27, 2009. *Id*. When the investigator met with Mussche the next day, he appeared to note that she did "not remember clearly." *Id* at 13.

There is nothing in this record to suggest that petitioner asked Howell to locate Mussche, and the record reveals that even if

he had, petitioner would have been unable to provide Howell with sufficient information to allow the defense to reasonably identify and locate her. Based upon this record, Howell's performance did not fall below an objective standard of reasonableness.

Even if counsel should have located Mussche, where petitioner's co-defendants were prepared to testify against him, and where numerous victims were able to identify petitioner as a perpetrator of the crimes, he would not have insisted on proceeding to trial had Howell located Mussche prior to the entry of the no-contest plea. For all of these reasons, the PCR trial court's decision denying relief on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#12) is denied. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 4th day of December, 2015.

*Marco Hernandez*
Marco A. Hernandez
United States District Judge

17 - OPINION AND ORDER